UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JODY ANNE FLOWERS,

      Plaintiff,

v.                        CASE No. 8:17-cv-768-T-24TGW

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,

      Defendant.

_____

## REPORT AND RECOMMENDATION

      The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and disabled widow's benefits.[1] Because the decision of the Commissioner of Social Security fails adequately to evaluate the opinions of the plaintiff's treating psychiatrist, I recommend that the decision be reversed and remanded for further consideration.

---

[1] This matter comes before the undersigned pursuant to the Standing Order of this court dated January 5, 1998. See also Local Rule 6.01(c)(21).

I.

The plaintiff, who was fifty-seven years old at the time of the administrative hearing and has an associate's degree in nursing, has worked as a registered nurse and an office nurse (Tr. 41, 42, 48). She filed claims for Social Security disability benefits and disabled widow's benefits, alleging that she became disabled on September 26, 2013, due to diabetes, obesity, gerd/reflux disease, high cholesterol, migraines, anemia, depression, anxiety, and bipolar disorder (Tr. 230, 234). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a de novo hearing before an administrative law judge (Tr. 37-69). The law judge found that the plaintiff has severe impairments of diabetes, obesity, and bipolar disorder with anxiety and obsessive compulsive disorder (20 CFR 404.1520(c)) (Tr. 23). He concluded that, with these impairments (Tr. 24),

> [t]he claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c), except that she can understand and carryout only simple, routine and repetitive procedures and tasks. The claimant can adjust to simple changes and make basic decisions, as long

as there is no more than occasional interaction with
the public.

The law judge concluded that, with these limitations and based on the
testimony of a vocational expert, the plaintiff was unable to perform any past
relevant work (Tr. 26).  However, in light of the testimony of the vocational
expert, the law judge determined that the plaintiff could perform other jobs
that exist in significant numbers in the national economy, such as handpacker,
warehouse worker, and kitchen helper (Tr. 27-28).  Accordingly, he decided
that the plaintiff was not disabled (Tr. 28).  The Appeals Council let the
decision of the law judge stand as the final decision of the defendant.

## II.

In order to be entitled to Social Security disability benefits and
disabled widow's benefits, a claimant must be unable "to engage in any
substantial gainful activity by reason of any medically determinable physical
or mental impairment which ...  has lasted or can be expected to last for a
continuous period of not less than twelve months."  42 U.S.C. 423(d)(1)(A).[2]

---

[2]The definition of disability for disabled widow's benefits is the same as for the
standard disability case, and the five-step sequential evaluation process is applicable to
disabled widow's benefits cases.  See 20 C.F.R. 404.1505(a), 404.1520(a)(2).

A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3).   In this case, the plaintiff must show that she became disabled before her insured status expires on December 31, 2018, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952.   With respect to her claim for disabled widow's benefits, the plaintiff must establish that she became disabled before the prescribed period for benefits ended on February 28, 2018.   20 C.F.R. 404.335(c).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).   Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record

-4-

compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff challenges the law judge's decision on three grounds (Doc. 16, pp. 8-19). The plaintiff argues that (1) "[t]he ALJ fails to properly consider all the medical opinions related to Plaintiff's mental health in accordance with the 20 C.F.R. 404.1527," (2) "[t]he ALJ's purported basis for making an adverse credibility determination in this case is not based upon substantial evidence," and (3) "[t]he ALJ's RFC assessment is not based upon substantial evidence because the ALJ fails to take into account all of the Plaintiff's symptoms" (id.). Some of the plaintiff's arguments are meritorious and raise an issue with respect to the law judge's decision regarding her mental impairments.

The plaintiff appears to have begun treatment with Dr. Gustavo J. Cuadra, a psychiatrist, in July 2011 (Tr. 446). Dr. Cuadra diagnosed the plaintiff with bipolar disorder and obsessive compulsive disorder (Tr. 447). Dr. Cuadra continued to treat the plaintiff through the death by suicide of her husband in October 2013, and thereafter (see Tr. 421, 654, 678). Dr. Cuadra routinely diagnosed the plaintiff with bipolar disorder and obsessive compulsive disorder (see, e.g., Tr. 415, 422, 430, 443, 444, 641).

-6-

According to Dr. Cuadra's most recent treatment note dated September 3, 2015, Dr. Cuadra again diagnosed the plaintiff with bipolar disorder and obsessive compulsive disorder (Tr. 679). At that appointment, the doctor noted that, in the psychiatric review of her system, she was positive for depression and anxiety (Tr. 678). Despite the plaintiff being oriented to time, place and person, and having grossly intact memory and attention, Dr. Cuadra assigned the plaintiff a Global Assessment of Functioning ("GAF") score of 41-50 (Tr. 678, 679). According to the doctor's notes, the plaintiff endorsed "[s]evere symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)" (Tr. 679). Dr. Cuadra continued the plaintiff on her current medicine, but increased her dosage with respect to one medication (id.).

The following month, on October 20, 2015, Dr. Cuadra completed a Mental Capacity Assessment Psychological form (Tr. 688-691). Dr. Cuadra wrote that the plaintiff's current diagnosis was bipolar disorder and complicated bereavement (Tr. 688). The doctor's answers on the form indicate essentially that the plaintiff would be unable to work. For example,

regarding the question of whether the plaintiff would "have any difficulties in maintaining concentration and attention for extended periods," Dr. Cuadra marked both boxes for moderate and marked difficulties (id.).[3]  Dr. Cuadra also marked that the plaintiff would have moderate and marked difficulties in "maintaining pace or keeping up with the pace of an average person" (id.).[4] For the question of "to what do you attribute the delays," Dr. Cuadra answered, the plaintiff's "severe anxiety ... is a distracting condition as well as features of depression including psychomotor retardation" (id.).

Dr. Cuadra also marked on the form that the plaintiff "[w]ould likely arrive at work late more than once a week due to psychological interruption" (Tr. 689).   To clarify his answer, the doctor explained that the plaintiff "[c]annot manage ADL's or household responsibilities let alone outside ones" (id.).  Dr. Cuadra also indicated that it is unknown whether the plaintiff's medications limit her ability to function (Tr. 688).  Dr. Cuadra

---

[3]For this question, moderate is defined as "difficulties or interference up to 1/3 of an 8 hour time span" (Tr. 688).  Marked is defined as "difficulties or interference up to 2/3 of an 8 hour time span" (id.).

[4]Moderate difficulty is defined as being "up to 1/3 less effective or efficient as a regular person," and marked difficulty is "up to 2/3 less effective or efficient as a regular person" (Tr. 688).

explained that the plaintiff "has drowsiness, confusion, nervousness, restlessness, and GI disturbance, but [it is] difficult to assess whether these are symptoms or side effects" (id.). Dr. Cuadra noted that these issues would cause the plaintiff to have moderate difficulties in interference in an 8-hour workday (id.). Dr. Cuadra opined that the plaintiff has had these limitations since 2013 and stated that his opinion was based on his direct observation and treatment, patient reports, his own experience and background, and psychological and psychiatric evaluation (Tr. 691). Certainly, based on these answers of extreme limitations, the plaintiff would not be able to work.

In this respect, Dr. Cuadra had completed a Mental Capacity Assessment form the previous year, on March 6, 2014, and it contained answers similar to the form completed in October 2015 (Tr. 247-248). On the form, Dr. Cuadra diagnosed the plaintiff with bipolar disorder (Tr. 247). Dr. Cuadra noted on the form that the plaintiff would have marked limitations in certain areas, including the ability to carry out detailed instructions, maintain attention and concentration for extended periods, and the ability to work a normal workday without interruptions from psychologically based symptoms (id.). Dr. Cuadra wrote that the plaintiff would also be absent from work "1-

3/month" (id.).  Dr. Cuadra indicated that his "[f]indings [were] based on routine follow-up assessments done every 1-3 months" (Tr. 248).

Notably, in one of his most recent treatment notes dated July 7, 2015, despite the plaintiff being oriented to time, place, and person with grossly intact memory and attention, Dr. Cuadra assigned the plaintiff a GAF score of 41-50.  Dr. Cuadra also diagnosed the plaintiff as having "obsessive-compulsive disorders (Axis I)" and "[o]ther and unspecified bipolar disorders, other (Axis I)" (Tr. 682, 683).  Dr. Cuadra wrote under the Axis and Plan section (Tr. 683):

> **Discussion**: Not suicidal. She seems to have physical manifestations of anxiety. Will add propranolol for mitigation of anxiety, and RTC in one month or PRN. She is applying for disability, and in my opinion she is completely incapable at this time of reliably attending and performing at work. She has difficulty attending to her own ADL's, and her severity of symptoms is very high.

Opinions from treating physicians are entitled to substantial or considerable weight unless there is good cause for not affording them such weight.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004).  Good cause exists when the treating physician's opinion is not bolstered by the

evidence, the evidence supports a contrary finding, or when the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge did not assign weight to Dr. Cuadra's opinion. This alone can constitute reversible error. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).

However, it is clear that the law judge discounted the doctor's extreme limitations (Tr. 26). The law judge, in rejecting Dr. Cuadra's opinion, stated (id.):

> As for the opinion evidence, Dr. Cuadra has routinely noted GAF scores of 61 to 70 and 51 to 60, with only sporadic assignments of GAF scores 41 to 50. He almost always noted intact social skills, as well as normal attention, memory, and concentration on mental status examination (Exhibits 1F, 4F, 5F, 6F, 7F, 9F, 11F, and 13F). For whatever reason, the doctor opined recently the claimant was disabled and unable to work. However, the regulations at 20 CFR 404.1527(d) indicate this is a legal conclusion reserved for the Commissioner. While SSR 06-3p requires adjudicators to carefully consider medical source opinions about any issue, including opinions about issues that are reserved to the Commissioner, the weight of the evidence is inconsistent with the underlying conclusion. Instead, the U.S.

Administrative Law Judge gives more weight to the State agency physical residual functional capacity assessments at Exhibits 7A and 8A, indicating the claimant is capable of medium work. The U.S. Administrative Law Judge notes too the State agency mental consultant's opinions at Exhibits 3A, 4A, 7A, and 8A. These even opine the claimant has no severe mental impairment to begin with (let alone disabling impairments). The undersigned gives these State agency mental assessments little weight, as recent evidence not considered by the State agency, at the very least, establishes severe mental impairments.

Thus, the law judge, in discounting Dr. Cuadra's opinion, states, "[f]or whatever reason, the doctor opined recently the claimant was disabled and unable to work" (Tr. 26). The law judge is correct in his statement that "this is a legal conclusion reserved for the Commissioner" (id.). An opinion that a plaintiff is disabled is not a medical opinion and is an issue reserved to the Commissioner. See, e.g., Denomme v. Commissioner, Social Security Administration, 518 Fed. Appx. 875, 877-878 (11th Cir. 2013); Hutchinson v. Astrue, 408 Fed. Appx. 324, 327 (11th Cir. 2011).

That reason, however, applies only to the comment by Dr. Cuadra in his July 7, 2015, treatment notes. It does not explain his reasons for discounting the two Mental Capacity Assessment forms that Dr. Cuadra

-12-

completed in March 2014 and October 2015, which indicate that the plaintiff has various marked mental limitations. The law judge does not mention or cite to the exhibits that contain the Mental Capacity Assessment forms completed by Dr. Cuadra (see Tr. 25, 26).[5] Therefore, there is no discussion by the law judge regarding his reasons for discounting the plaintiff's marked mental limitations. The law judge erred either by overlooking these forms, or by failing to provide his reasons for discounting them. If the latter, the law judge was required to discuss why he disregarded them. Vega v. Commissioner of Social Security, 265 F.3d 1214, 1219 (11th Cir. 2001); Caulder v. Bowen, 791 F.2d 872, 880 (11th Cir. 1986) ("The ALJ must articulate his reasons for not giving weight to the diagnoses."); Luckey v. Astrue, 331 Fed. Appx. 634, 640 (11th Cir. 2009).

Notably, both forms completed by Dr. Cuadra explain and provide reasons for Dr. Cuadra's opinion contained in his July 2015 treatment note that indicates the plaintiff is unable to work and "has difficulty attending to her own ADL's, and her severity of symptoms is very high" (see Tr. 683).

---

[5]The Mental Capacity Assessment form completed on March 6, 2014, is found at exhibit number 3E, and the later Mental Capacity Assessment Psychological form completed on October 20, 2015, is at exhibit 14F (Tr. 247, 688).

It is certainly not adequate for the law judge to dismiss Dr. Cuadra's justifications by simply saying "[f]or whatever reason." Ryan v. Heckler, 762 F.2d 939, 941-42 (11th Cir. 1985); Hudson v. Heckler, 755 F.2d 781, 786 (11th Cir. 1985); Dempsey v. Commissioner of Social Security, 454 Fed. Appx. 729, 732 (11th Cir. 2011).

In a related argument, the plaintiff raises an issue with respect to the law judge discounting Dr. Cuadra's assigned GAF scores (Doc. 16, pp. 10-11). The plaintiff's argument is meritorious.

The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. The law judge noted that Dr. Cuadra assigned the plaintiff various GAF scores throughout his treatment of the plaintiff which ranged from mild scores to severe scores (Tr. 26).[6]

---

[6]A rating of 51-60 reflects "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers") Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 61-70 indicates "[s]ome mild symptoms (e.g. depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning...but generally functioning pretty well, has some meaningful interpersonal relationships." Id. A rating of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional

The law judge, in discounting Dr. Cuadra's opinion, stated (Tr. 26):

> As for the opinion evidence, Dr. Cuadra has routinely noted GAF scores of 61 to 70 and 51 to 60, with only sporadic assignments of GAF scores 41 to 50.

The plaintiff argues that the "[t]he ALJ fails to explain why he characterizes these GAF scores as 'sporadic' but lists the 61-70 scores, which occurred less frequently and before the onset date, as part of 'routinely noted GAF scores'" (Doc. 16, pp. 10-11).   In this respect, the law judge mischaracterizes Dr. Cuadra's assigned GAF scores.  Dr. Cuadra assigned the plaintiff GAF scores of 61 to 70, which indicates mild symptoms, prior to (as the plaintiff correctly points out) her alleged onset disability date (and prior to her husband's death) (id., p. 10; see Tr. 424 (GAF score of 61-70, dated September 24, 2013), Tr. 426 (GAF score 61-70, dated June 27, 2013), Tr. 428 (GAF core 61-70, dated April 9, 2013), Tr. 440 (GAF score 61-70, dated January 3, 2012)).   After the plaintiff's onset disability date, Dr. Cuadra

---

rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).  Id.

assigned the plaintiff GAF scores of 51-60, which indicate moderate symptoms (see, e.g., Tr. 416 (dated February 5, 2014), Tr. 420 (dated November 8, 2013), Tr. 645 (dated March 21, 2014)).

Further, the law judge's statement and the Commissioner's argument that the plaintiff's GAF scores of 41 to 50 were "only sporadic" are inaccurate (see Tr. 26; see Doc. 17, p. 7).   In Dr. Cuadra's most recent treatment notes, he assigned the plaintiff a GAF score of 41-50, which indicates severe symptoms.[7]  Thus, as recently as September 3, 2015, Dr. Cuadra assigned a GAF score of 41-50 (Tr. 679). Further, in the two previous months, the plaintiff was assigned the same lower scores in August and July 2015, indicating that those scores were not "sporadic," but recurring (see Tr. 681, 683).

Thus, Dr. Cuadra showed in his GAF scores that the plaintiff's mental health was deteriorating.  Notably, the law judge gave no indication that he considered whether the plaintiff's condition in July-September 2015

---

[7]Dr. Cuadra assigned a GAF score of 41-50 on June 27, 2014 (Tr. 641).

warranted greater functional limitations than he determined were present during the early part of the period at issue.

Moreover, the recent GAF scores assigned by Dr. Cuadra reflect his opinion of the plaintiff's mental status. The law judge did not purport to discount the low GAF scores and certainly did not provide any reason for doing so. In fact, not only did the law judge not discount the GAF scores, but he relied upon them to the extent he thought they supported his decision.

It is noteworthy that, in determining the plaintiff's degree of mental limitations in the areas of activities of daily living, social functioning, and concentration, persistence or pace, the law judge considered that the plaintiff cared for three children and household pets (Tr. 23, 26). These reasons are insubstantial. The three children are grown and the household pets consisted of one cat (which, as cat owners know, requires only minimal care). The law judge's reliance on such flimsy circumstances highlights the weakness in his decision.

In sum, the law judge failed to evaluate Dr. Cuadra's opinions, as well as his GAF scores. That failure constitutes reversible error.

The plaintiff has raised other issues.  It is appropriate to pretermit consideration of those issues since on remand a new decision will be entered.

## IV.

For the foregoing reasons, the Commissioner fails adequately to evaluate the opinions of the plaintiff's treating psychiatrist.  I, therefore, recommend that the Commissioner's decision be REVERSED, and the matter REMANDED for further proceedings.

Respectfully submitted,

THOMAS  G.  WILSON
UNITED  STATES  MAGISTRATE  JUDGE

DATED: AUGUST _15_, 2018

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. 11th Cir. R. 3-1.